IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | CASE NO: 2:09cr184-WKW |
| ) | |
| JAMES MORELAND  ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On February 25, 2010, James Moreland ("Moreland") filed a motion to suppress all evidence seized and all statements made during an allegedly unconstitutional detention and search and seizure of a residence on November 20, 2008. (Doc. # 21). Moreland asserts that the search of his residence "was based upon a search warrant obtained through material misrepresentation in the affidavit in support of probable cause." (*Id*. at 1). According to Moreland, if the false statements were removed, the affidavit in support of the search warrant would not establish probable cause and all evidence seized and all statements made should be suppressed as violative of the Fourth Amendment.

The court held an evidentiary hearing on the defendant's motion to suppress on March 15, 2010. Based on the evidence presented during the hearing, the court concludes that the motion to suppress is due to be denied.

**II. FACTS**

On November 20, 2008, Corporal T.D. James ("James"), a Montgomery police officer, was assigned to the narcotics division. (Evid. Hr'g Tr. at 10). James investigated

and subsequently arrested the defendant, James Moreland, on November 20, 2008. (*Id*.)

A confidential informant, "a couple of days prior" to November 20, 2008, telephoned James, and advised James that he could purchase a quantity of cocaine from an individual who was later identified as the cooperating defendant or cooperating source ("CS") in the affidavit.[1] The confidential informant had a felony charge of possession of controlled substances pending against him, and had a cooperation agreement with James. (*Id*. at 11-12). The confidential informant had also previously provided James with information. (*Id*. at 12). The confidential informant identified the cooperating source by name to James, and James checked into the cooperating source's criminal history. (*Id*. at 11 & 33). James discovered that the cooperating source has some prior drug arrests. (*Id*. at 33).

On November 20, 2008, the confidential informant told James that "the individual [cooperating source] was ready and could sell him [the confidential informant] a quantity of crack cocaine." (*Id*.). The confidential informant telephoned the cooperating source from James's office. (*Id*. at 15). Although James did not record the conversation, he listened to the call. (*Id*. at 17). James testified to the substance of the telephone call.

> After the CI made contact, the phone call as far as the CS was going to meet the CI at a particular location on the west side of town. At that point, he was to turn over the money to the CS, and the CS would go and get the narcotics from his source.

---

[1] Much confusion in this case results from the acronyms used by the witnesses and attorneys in this case. The confidential informant is referred to as the "CI." who was the confidential informant" as well as "CS - cooperating source or cooperating defendant." The cooperating source was identified by name during the evidentiary hearing, but for the purpose of this recommendation and for consistency, the court will simply refer to the individual as the cooperating source.

(*Id*.).

The confidential informant contacted the cooperating source and arranged to meet at a particular location on the west side of town. The confidential informant would then give the cooperating source money to purchase narcotics, and the cooperating source would purchase drugs from the source's source. (*Id.* at 17).

The confidential informant and the cooperating source met several miles away from where the cooperating source ultimately purchased drugs on Carlisle Street. (*Id*. at 18). Once the confidential informant and cooperating source agreed to meet, James positioned eight narcotics officers and six SWAT team members "east and west of the meet location so they could follow the CS [cooperating source] from the – when he had left from the meet location." (*Id*. at 19). The confidential informant was also equipped with a listening device which James monitored. (*Id*. at 42).

The confidential informant and the cooperating source met in a residential area known as Hunter Station. (*Id*. at 43). Police first observed the cooperating source as he entered the neighborhood.[2] When the cooperating source left, ten minutes later, officers followed him from Hunter Station to Carlisle Street. (*Id.* at 43-45). No one officer kept the cooperating source in sight at all times, but different officers were able to watch the cooperating source from the time he left Hunter Station until he arrived at the house on Carlisle Street. (*Id*.).

---

[2] At the time of the meeting between the confidential informant and the cooperating source, the cooperating source was the target of James's investigation. (*Id*. at 33). Because the cooperating source was the target, the officers did not search his person or car before he went to Carlisle Street. (*Id*. at 40).

3

The officers also had radios and were able to communicate with each other as they followed him. (*Id*. at 45-46).

The cooperating source arrived at the residence on Carlisle Street and walked towards the rear of the residence. (*Id*. at 48). No officer observed the him enter the house. (*Id*.). Thereafter, the cooperating source informed the confidential informant that he needed additional money to make the drug buy. (*Id*. at 49). James listened to the conversation between the cooperating source and the confidential informant. (*Id*.) The cooperating source then returned to Hunter Station to meet with the confidential informant.[3] (*Id*.)

After meeting the confidential informant, the cooperating source returned to the residence on Carlisle Street. (*Id*. at 50). He was observed by officers from the time he left Hunter Station until he arrived at the Carlisle Street address. (*Id*.). Officers watched the cooperating source walk around to the back of the house. (*Id*. at 51). Again, no officer witnessed the drug buy between the cooperating source and Moreland. Shortly thereafter, the cooperating source left the house on Carlisle Street and went back to meet the confidential informant at Hunter Station. (*Id*. at 51). The cooperating source delivered cocaine to the confidential informant. (*Id*. at 65).

After completing the drug transaction with the confidential informant,[4] the cooperating source was stopped and immediately arrested. (*Id*. at 52-53). The cooperating

---

[3] The cooperating source was followed by officers back to Hunter Station. (*Id*. at 49).

[4] James listened to the transaction. (*Id*. at 52).

4

source was transported to the narcotics division of the Montgomery Police Department. (*Id*. at 53). James questioned the cooperating source about the drug transaction with the confidential informant. (*Id*. at 54). The cooperating source admitted selling cocaine to the confidential informant. (*Id*. at 55 & 57).

After confessing to selling cocaine, the cooperating source named Moreland as one of his sources of narcotics. (*Id*. at 59). It is at this juncture that the source became a "cooperating source."[5] (*Id*. at 65-66).

Relying on his investigation, James signed the affidavit supporting the warrant. The affidavit is based on James's personal knowledge and "on facts obtained by the Montgomery Police Department Narcotics and Intelligence Bureau." (Def's Ex. 2). The affidavit named the location of the residence as 2328 Carlisle Street, Montgomery, Alabama, and described the residence as a "lime green single story dwelling located on the north side of Carlisle Street, Montgomery, Alabama." (*Id*.). The affidavit then recites the following facts to establish probable cause in support of the search warrant:

1) Probable cause being that in the month of November 2008, a cooperating defendant, hereafter referred to as the "CS", purchased a quantity of crack cocaine from B/M, James MOORELAND, DOB: 12/28/1970 at the 2328 Carlisle Street, Montgomery, Alabama.
2) Further probable cause being that police surveillance was conducted on the "CS" prior to, and after the drug purchase. The "CS" was stopped after leaving the residence and admitted of the purchase of a quantity of crack cocaine from MOORELAND at 2328 Carlisle Street,

---

[5] The cooperating source is no longer cooperating with the police. (*Id*. at 37). Although the cooperating source provided reliable information, he declined to participate in any investigation or prosecution. (*Id*.).

5

>   Montgomery, Alabama. This information was corroborated by police surveillance.
> 3) Further probable cause being that the CS provided accurate and reliable information to the Montgomery Police Department following the arrest that could be corroborated by police surveillance.

(*Id*.).

James testified that at the time of the drug transactions between the confidential informant and Moreland, the cooperating source was not cooperating. He did not cooperate until after his arrest from the controlled drug buy. James testified that he identified the source as a cooperating source or defendant in the warrant because at the time James applied for the warrant, the source had agreed to cooperate after his arrest. (Evid. Hr'g Tr. at 67). Information in the warrant was provided by the cooperating source and was corroborated by the officers' surveillance of him. The state court magistrate issued the warrant based on James's affidavit.

The search warrant was executed at the Carlisle Street residence on November 20, 2008, at 8:50 p.m. Officer seized powder cocaine, crack cocaine, marijuana, digital scales, two handguns, ammunition and assorted documents. (Def's Ex. 7).

Moreland was indicted on November 18, 2009, and charged with unlawful transportation of firearms in violation of 18 U.S.C. § 922(g)(1) and possession of marijuana and cocaine hydrochloride in violation of 21 U.S.C. § 844(a). (Doc. # 1).

### III. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their

6

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[6]  "The Amendment protects persons against unreasonable searches of "their persons [and] houses." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution.  *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Moreland contends that the evidence taken from his residence during the search conducted on November 20, 2008, should be suppressed because the affidavit in this case contains material misrepresentations, and when those misrepresentations are removed, the affidavit does not establish probable cause for the issuance of the warrant.

### A. Material Misrepresentations

Moreland argues that statements in the affidavit filed in support of the warrant were material misrepresentations that were intentionally or recklessly made.  First, he contends

---

[6] Specifically, the Fourth Amendment provides that "[]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

that using the term "cooperating source" in this instance is disingenuous at best because it implies to the magistrate that James had a history with the source which he did not. Next, Moreland contends that James misrepresented the police surveillance on the cooperating source because the police only watched him drive; they did not actually see if enter the Carlisle Street residence. Finally, Moreland argues that the statements that the cooperating source provided "accurate and reliable information" are not accurate because the only information provided was about this drug transaction, and there is no corroboration by police surveillance because no officer observed the drug transaction.[7]

Affidavits supporting search warrants are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

> To prevail on a motion-based on allegations of falsity in the supporting affidavit-to suppress evidence that was seized pursuant to a search warrant, the defendant has the burden of establishing that (1) the affiant made the alleged misrepresentations or omissions knowingly or recklessly and (2) exclusion of the alleged misrepresentations or inclusion of the alleged omissions would result in a lack of probable cause.

*United States v. Fussell*, 2010 WL 546714 (11th Cir. Feb. 17, 2010) (No. 09-11555). *See also United States v. Phillips*, 323 Fed. Appx. 778, 780 (11th Cir. 2009) (No. 08-11502); *United States v. Umansky*, 291 Fed. Appx. 227 (11th Cir. 2008). "Allegations of negligence

---

[7] To the extent that Moreland argues that affirmative statements about the cooperating source's reliability constitute false assertions within the meaning of *Franks* because the cooperating source had a prior criminal history, his argument fails. At the evidentiary hearing, Moreland concedes that James did not lie to the magistrate to secure the search warrant. Rather, he argues, James concealed material facts, such as the cooperating source prior criminal history, which lends weight to his argument that the cooperating source was not reliable "[T]he omission of the informant's criminal convictions and incarceration, when considered with all the information contained with the application, does not invalidate the warrant." *United States v. Ofshe*, 817 F.2d 1508, 1513 (11th Cir. 1987).

8

or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Franks*, 438 U.S. at 171.

If a defendant demonstrates by a preponderance of the evidence that an affidavit used to procure a search warrant contains intentionally or recklessly false statements and that, without the false statements, the affidavit is insufficient to establish probable cause, the court must void the search warrant and exclude the fruits of the search. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "[A] warrant affidavit violates the Fourth Amendment when it contains omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) *quoting United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980). Thus, a defendant must establish (1) that information contained in the affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in "reckless disregard for the truth," and (3) that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant. *See O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001).

Moreland first argues that James's use of the term "cooperating source" in the affidavit was a material misrepresentation because it implies a history with the source which James did not have. The affidavit identifies the "CS" as a "cooperating defendant." (Def's Ex. 2). Moreland fails to demonstrate how this statement is untrue. At the time James

9

applied for the search warrant, the source was cooperating. He is entitled to no relief on this basis.

Next, Moreland challenges statements related to police surveillance on the cooperating source. According to Moreland, any statements that police surveillance corroborated information from the cooperating source are inaccurate and incomplete, and thus, constitute material misrepresentations. His arguments miss the mark. First, "independent police corroboration has never been treated as a requirement in each and every case." *United States v. Brundidge*, 170 F.3d 1350, 1353 (11th Cir. 1999). Next, and more importantly, officers corroborated the cooperating source's information by observing him from the time he met with the confidential source until the time he was arrested. The fact that he was not observed every moment is of no import. Officers followed the cooperating source from Hunter Station to the residence on Carlisle Street twice. They watched him walk around the residence and then leave the residence. The cooperating source sold to the confidential informant crack cocaine. The officers recovered the drugs. The cooperating source admitted that Moreland was a source of his narcotics and confessed to selling cocaine to the confidential informant. The officers' surveillance of the controlled buy sufficiently corroborates the information provided by the cooperating source. *See United States v. Akel*, 337 Fed. Appx. 843, 857 (11th Cir. 2009). In this case, the cooperating source admitted his personal involvement in the illegal drug activity and reported his personal observations. Clearly, the cooperating source's information was "against his penal interest." *See United States v. Martin*, 615 F.2d 318, 324-

25 (11th Cir. 1980). Finally, James listened to conversations between the confidential informant and the cooperating source. *See United States v. Owden*, 345 Fed. Appx. 448, 454 (11th Cir. 2009) (No. 08-11015). *See also United States v. Awan*, 966 F.2d 1415, 1428-31 (11th Cir. 1992); *United States v. Russell*, 703 F.2d 1243, 1248 (11th Cir. 1983).

> "An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitled the [cooperating source's] tip to greater weight than might otherwise be the case." *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Moreover, "observations and other information supplied by officers involved in a common investigation can, taken together, create probable cause for a search." *Id*. (citing *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986)). Here, the events the morning of the arrest corroborated [the cooperating source's] statements.

*Owden*, 345 Fed. Appx. at 455.

Finally, Moreland argues that the statements that the cooperating source provided "accurate and reliable information" are not accurate because the only information the source provided was about this particular drug transaction. This information is enough.

> There are different ways for police to corroborate the CI's "veracity." Independently confirming that *what* []he said is true is one way; creating circumstances under which []he is unlikely to lie is another. Here the CI made [his] observations in the context of a controlled surveillance operation and reported intermittently to supervising officers, who corroborated [his] access to the target of the investigation. As [his] report consisted of facts readily verifiable upon a subsequent search by the police . . . , the CI was unlikely to be untruthful, for, if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly.

*United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995).

The court recognizes, and nobody disputes, that the affidavit is not perfect. However,

11

perfection is neither the standard nor the question; the court is bound by the standards set forth in *Franks*. Moreland has failed to present any objective evidence demonstrating that statements in the affidavit were false. Rather, he argues that the statements were inaccurate. Furthermore, although Moreland takes issue with the implication that the cooperating source had a history with James, he has failed to show by a preponderance of the evidence that the affidavit used to procure the state search warrant contained intentionally or recklessly false statements. At the time the affidavit was presented, the source was cooperating. Finally, the mere fact that more or different corroboration was available is insufficient to make the requisite showing under *Franks* that statements in the affidavit were untrue. Consequently, because the court concludes that Moreland has not established that the affidavit in support of the search warrant was based on intentionally or recklessly false information, his motion to suppress the items seized from his residence on Carlisle Street should be denied.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **July 8, 2010.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 25th day of June, 2010.

　　　　　　　　　　　　　　　　　　　　/s/Charles S. Coody　　　　　　　　
　　　　　　　　　　　　　　　　　　CHARLES S. COODY
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE