IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 2:09-CR-184-WKW [WO] |
| | ) |
| JAMES MORELAND | ) |

**<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>**

Defendant James Moreland ("Moreland") is charged in a two-count indictment with (1) unlawful transportation of firearms, in violation of 18 U.S.C. § 922(g)(1), and (2) possession of marijuana and cocaine hydrochloride ("cocaine powder") in violation of 21 U.S.C. § 844(a). Mr. Moreland filed a motion to suppress all physical evidence seized from his residence and his person, all statements made by him, and any other "fruits" of the allegedly illegal detention, questioning, searches and seizures. (Mot. to Suppress (Doc. # 21).) Mr. Moreland contends that the search of his residence was "based upon a search warrant obtained through material misrepresentation in the affidavit in support of probable cause." (Mot. to Suppress.) After an evidentiary hearing and consideration of the parties' contentions, the Magistrate Judge filed a Recommendation, recommending the denial of Mr. Morelands's motion to suppress. (Doc. # 36.) Mr. Moreland filed Objections to the Recommendation. (Def.'s Br. (Doc. # 37).) Pursuant to 28 U.S.C. § 636(b)(1), the court conducts a *de novo* review of the portions of the Recommendation to which the objections were made. For the following reasons, Mr. Moreland's objections are due to be overruled and his motion to suppress is due to be denied.

### *1.  The Warrants Clause of the Fourth Amendment*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. iv. It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* Probable cause to support a search warrant exists when the "totality of the circumstances allows the conclusion that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). With respect to a suspect's home, "the affidavit [supporting probable cause] should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a defendant "[is] permitted to attack the veracity of a warrant affidavit after the warrant has been issued and executed." *Id.* at 164. Implicit within the mandate of the Warrant Clause is the obvious assumption that the supporting Oath or affirmation will be made truthfully. *Id.* at 165 (citation omitted). A *Franks* violation occurs upon a showing that a "false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to a finding of probable cause." *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009)

(quoting *Franks*, 438 U.S. at 155-56).  Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution.  *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Mr. Moreland contends that the evidence taken from his residence should be suppressed because the affidavit (Def.'s Objection 1-2) supporting probable cause contained "material misrepresentations."[1] (Mot. to Supp. 5.)  These "material misrepresentations" concern the nature and adequacy of the police's investigation of Moreland and how the evidence from the investigation was presented to the state magistrate who issued the search warrant.

Mr. Moreland's objections are due to be overruled because most of the alleged "misrepresentations" do not fit within the meaning of statements made knowingly, intentionally or with reckless disregard for the truth.  *Sarras*, 575 F.3d at 1218; *Franks*, 438 U.S. at 155-56.  As to Mr. Moreland's one objection which does make that threshold

---

[1] The Affidavit recites the following facts in support of probable cause for a search warrant:

1) Probable cause being that in the month of November, 2008, a cooperating defendant, hereafter referred to as the "CS", purchased a quantity of crack cocaine from B/M James MOORELAND [sic], DOB: xx/xx/1970 at the XXXX Carlisle Street, Montgomery, Alabama.

2) Further probable cause being that police surveillance was conducted on the "CS" prior to, and after the drug purchase. The "CS" was stopped after leaving the residence and admitted of [sic] the purchase of a quantity of crack cocaine from MOORELAND [sic] at XXXX Carlisle Street, Montgomery, Alabama. This information is corroborated by police surveillance.

3) Further probable cause being that the CS provided accurate and reliable information to the Montgomery Police Department following the arrest that could be corroborated by police surveillance.

showing, that objection is not material, in the sense that, when corrected to reflect the truth, the affidavit nevertheless conveys enough information to allow issuance of a search warrant on probable cause. *See United States v. Karpodelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) ("The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking.") (quotation omitted). The Defendant has not made the necessary showing.

### *2.  Statements 1, 3, 4, 5, 6*

The first statement to which Mr. Moreland objects can be found in paragraph one of the Affidavit. Mr. Moreland contends that paragraph one's description of the CS as a "cooperating defendant" materially misrepresented the nature of his relationship with the investigating officers. Mr. Moreland argues that such a title gives the impression that the CS was conducting a controlled buy from Moreland on behalf of the police. In fact, the CS only became a cooperating defendant when he was arrested after leaving Moreland's address. (Evid. Hr'g Tr. 33 (Doc. # 34).) Relying on the case of *United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001)*,* Mr. Moreland argues that this discrepancy amounts to a material misrepresentation. His reliance is misplaced. In *Novaton*, the Eleventh Circuit considered misrepresentations in an affidavit concerning the past cooperation of four confidential informants involved in the case. *Id.* at 987. Crucially, the affidavit included a statement that the informants "had proven reliable in the past." *Id.* at 987.

In this case, there were no representations in the affidavit that the CS had been reliable in the past. In fact, the reality is that this was a simple lack of clarity in referring to the CS

4

with the same name throughout the entire affidavit. If the magistrate had any doubt as to the nature of the CS's relationship with the police after paragraph one, the more detailed description of the police's interactions with the CS in paragraph two of the Affidavit resolves the issue. Paragraph two states in part that the police were conducting surveillance on the CS, and that he "was stopped after leaving the residence and admitted of the purchase of a quantity of crack cocaine from MOORELAND at XXXX Carlisle Street, Montgomery, Alabama." The statements in paragraph two that the CS was "stopped" and "admitted of the purchase" lucidly imply that he was adversarial to the police until that time. Although paragraph one could have been more clear as to the nature of the CS's role in the investigation, *Franks* does not contemplate suppression on account of anything less than false statements, made knowingly or intentionally, or made with reckless disregard for the truth. 438 U.S. at 155-56.

    The third statement to which Mr. Moreland points can be found in paragraph two of the Affidavit. Mr. Moreland objects to the references to "police surveillance" of the CS. Mr. Moreland argues that the affidavit gives the impression that the CS was under constant surveillance, when, in fact, this was not true. The CS was a moving target for most of the course of the transaction. He met the police's cooperating confidential informant ("CI"), then drove nearly seven miles to the Carlisle Street residence, then drove back to the CI's location in order to request more money, and then returned to the Carlisle Street residence, and finally returned to deliver the crack cocaine to the CI at the CI's location, after which he was arrested. Although Mr. Moreland is correct that the police surveillance was not

continuous, the Affidavit never stated otherwise. Furthermore, there were no significant gaps in the surveillance (by fourteen officers) or time discrepancies whereby Mr. Moreland could have done anything other than drive back and forth between the CI's location and the Carlisle address.[2] (Evid. Hr'g Tr. 19, 69.)

The fourth statement in the Affidavit to which Mr. Moreland objects concerns the timing of when the CS was stopped by the police. Paragraph two states that the CS "was stopped after leaving the residence." (Def.'s Objection 1-2.) Mr. Moreland argues that this statement gives the misleading impression that the CS was stopped immediately after he left the Carlisle Street residence. In fact, the CS was stopped after he delivered the crack cocaine to the CI at the CI's location several miles away. Mr. Moreland is attempting to hit a home-run with a fly-swatter. The affidavit, which was hastily prepared in the time-frame of less than an hour, did not in perfect detail explain the exact sequence of events with crystal clarity. Regardless, what is in this case an inconsequential omission cannot be seen as constituting a "'false statement [made] knowingly or intentionally, or with reckless disregard for the truth.'" *Sarras*, 575 F.3d at 1218 (quoting *Franks*, 438 U.S. at 155-56).

The fifth statement in the Affidavit to which Mr. Moreland objects can be found at the end of paragraph two of the Affidavit. Mr. Moreland asserts that the CS's post-stop statement was not corroborated by police surveillance. Mr. Moreland argues that there was no police observation of any encounter between the CS and him. Rather, he seems to be

---

[2] The surveillance was effective and continuous enough to track the CS to an unknown destination, the Carlisle Street address, in the first place. (Evid. Hr'g Tr. 45.)

continuing his argument concerning the statement immediately preceding the corroborating statement, which says that the CS admitted to purchasing the particular quantity of crack cocaine from Mr. Moreland, the propriety of which will be taken up below. However, it should be noted that the post-stop statement that the CS did make, namely that Moreland was one of his sources (Evid. Hr'g Tr. 59, 74), was corroborated by police surveillance of the CS taking drug money from the CI directly to Moreland's residence, and then returning directly to the CI with crack cocaine. The Affidavit was in support of a *search* warrant, probable cause for which being a link between the Carlisle Street address and drug activity. The fact that there was no surveillance of an encounter between Mr. Moreland and the CS is irrelevant to the probable cause to search the Carlisle Street address.

The sixth statement to which Mr. Moreland objects is the representation in paragraph three of the Affidavit that the post-stop information that the CS provided was "accurate and reliable" and "corroborated by police surveillance." (Evid. Hr'g Tr. 2.) This statement does not misrepresent the truth as it existed when Detective James prepared the Affidavit. The CS provided information that Moreland was one of his sources, soon after he had been seen entering and exiting Moreland's Carlisle Street address for the purpose of purchasing crack cocaine. The information that Moreland was his source was corroborated by police surveillance of the CS entering the Carlisle Street address after receiving drug money, and exiting the Carlisle Street address and delivering drugs to the CI.

The probable cause standard is met when the "totality of the circumstances [allow] the conclusion that 'there is a fair probability that contraband or evidence of a crime will be

7

found in a particular place.'" *Kapordelis*, 569 F.3d at 1310 (quoting *Gates*, 462 U.S. at 238). With respect to his objections to statements 1, 3, 4, 5, and 6, Mr. Moreland is attempting to elevate the probable cause standard for a search warrant to a much higher and improper standard.

### 3.     *Statement 2*

Mr. Moreland's second objection can be found in paragraph two of the Affidavit. Contrary to the statements in paragraph two, Moreland contends that the "CS" never stated that he purchased the November 20, 2008, quantity of crack cocaine from Mr. Moreland, or from anyone at 2328 Carlisle Street.  Testimony from Detective James reveals that Mr. Moreland's assertion is correct; the CS only stated that Mr. Moreland was one of his sources and never made any statement that he purchased crack cocaine from 2328 Carlisle Street. (Evid. Hr'g Tr. 57.)  The CS never specifically linked the crack cocaine he purchased on that day to Mr. Moreland.  Paragraph two misrepresents this fact and was made with "reckless disregard for the truth."  *Franks*, 438 U.S. at 155-56.  It falsely states that the CS "admitted of the purchase of a quantity of crack cocaine from MOORELAND [sic] at XXXX Carlisle Street, Montgomery, Alabama."  (Def.'s Objections 2.)

However, materiality is the "second-step of the *Franks* test" and is "essential no matter how deliberate or reckless the misrepresentations were." *Novaton*, 271 F.3d at 987. Under the materiality test, Mr. Moreland bears the burden of showing that, absent this misrepresentation, probable cause would have been lacking.  *See Kardopelis*, 569 F.3d at 1309.  "[A] defendant must show not only that misrepresentations or omissions were

intentionally or recklessly made, but also that, absent those misrepresentations or omissions, probable cause would have been lacking." *Novaton*, 271 F.3d at 987.

What is at issue is whether there was probable cause to search the *residence* at 2328 Carlisle Street, which is clearly described in the Affidavit by street number, by street name and as "a lime green single story dwelling." In the context of obtaining a warrant to search this residence, the precise identity of the individual in the residence from whom the crack cocaine was purchased is not the pivotal fact. Given the level of police surveillance over the encounter, the uninterrupted trips to and from the residence at 2328 Carlisle Street, the crack cocaine which the CS sold to the confidential informant after leaving 2328 Carlisle Street, and the CS's post-stop statement during which he named Mr. Moreland as a source, it becomes evident that a misrepresentation as to the identity of the seller and to the origin of the drugs is not material, and therefore does not negate probable cause. These other facts and circumstances establish "a fair probability" that the Carlisle Street address was used for the purpose of selling crack cocaine. *See Kardopelis*, 569 F.3d at 1310 (*quoting Gates*, 462 U.S. at 238).

### *4.  Order*

Accordingly, it is ORDERED that Mr. Moreland's objections (Doc. # 37) are OVERRULED. It is further ORDERED that the Recommendation (Doc. # 36) is ADOPTED, and that the motion to suppress (Doc. # 21) is DENIED.

DONE this 27th day of October, 2010.

                                              /s/ W.  Keith Watkins
                                       UNITED STATES DISTRICT JUDGE